Safia A. Anand (SA 2386)
Martin J. Feinberg (pending *pro hac* admission)
OLSHAN FROME
WOLOSKY LLP
*Attorneys for Plaintiff*
744 Broad Street, 16th Floor
Newark, New Jersey 07102
(212) 451-2300
sanand@olshanlaw.com

and

Michael W.O. Holihan (pending *pro hac* admission)
Holihan Law
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
(407) 660-8575
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKE, INC.,<br><br>                          Plaintiff,<br><br>          -against-<br><br>PMC INTERNATIONAL INC.,<br>MING PAN and<br>VARIOUS JOHN DOES,<br>JANE DOES and XYZ COMPANIES,<br><br>                          Defendants. | Civil Action No.<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR TRADEMARK COUNTERFEITING,
TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN,
TRADEMARK DILUTION, IMPORTATION OF GOODS BEARING
INFRINGING MARKS, AND VIOLATION OF TARIFF ACT**

Plaintiff NIKE, Inc. (hereinafter referred to as "Nike"), by its attorneys Olshan Frome

Wolosky LLP and Holihan Law allege on knowledge as to its own acts and otherwise on

information and belief as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, as well as unlawful importation of goods bearing infringing/counterfeit marks in violation of the laws of the United States and the violation of the Tariff Act. Nike seeks an injunction, damages and related relief.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. and Tariff Act, 19 U.S.C. § 1526(a). Venue is properly founded in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## THE PARTIES

3.     Nike is an Oregon corporation and maintains its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

4.     Defendant PMC International Inc. (hereinafter referred to as "PMC Int'l") is a New York corporation, whose principal place of business is 140-45 157th Street, Unit F1, Jamaica, NY 11434. PMC Int'l is a licensed customs broker who transacts business in and/or has contracted to import, distribute, transport, or assist in the importation, distribution, and/or transportation of the infringing and counterfeit goods at issue in Newark, New Jersey and in this judicial district, and that regularly conducts customs business within the Port of Newark.

5.     Defendant Ming Pan (hereinafter referred to as "Pan"), is an officer and director of PMC Int'l, who does business in the State of New Jersey and this District, and who regularly conducts customs business with the Port of Newark. Pan is the moving, active, dominating and controlling force behind PMC's infringing, counterfeiting and other wrongful activities hereinafter alleged, and personally participated in transactions alleged herein. Pan is a licensed

2

2115166-1

customs broker who transacts business in and/or has contracted to import, distribute and/or transport the infringing goods at issue in New Jersey and in this judicial district. Pan & PMC Int'l will hereinafter be collectively referred to as "PMC".

6.      Due to the nature of PMC Int'l and Pan's business practices, the identity of the various John Does, Jane Does and XYZ Companies is not presently known, with the exception of PMC Int'l and Pan. The Complaint herein will be amended, if appropriate, to include the name or names of said individuals and/or entities when such information becomes available (PMC Int'l, Pan and the various John Does, Jane Does and XYZ Companies will hereinafter be collectively referred to as "Defendants").

## NIKE'S FAMOUS TRADEMARKS

7.      Since 1971, Nike has advertised, offered for sale, and sold footwear and other related products throughout the United States. Nike's sneakers have been widely advertised, offered for sale and sold throughout the United States under various distinctive trademarks, including "NIKE," "NIKE AIR," the distinctive "Swoosh" Design, which sometimes is used in conjunction with the "NIKE" trademark or the "NIKE AIR" trademark, and the "Jumpman" Design trademark. The Nike trademarks have at all relevant times been owned by Nike or its predecessor.

8.      As a result of their exclusive and extensive use, the Nike trademarks have acquired enormous value and recognition in the United States and throughout the world. The Nike trademarks are well known to the consuming public and trade as identifying and distinguishing Nike exclusively and uniquely as the source of origin of the high quality products to which the marks are applied. The Nike trademarks are both inherently distinctive and famous.

3

9.     The Nike trademarks registered in the United States Patent and Trademark Office

for footwear include the following (hereinafter collectively the "Nike Trademarks"):

| MARK | DESIGN | REGISTRATION NO. | DATE OF ISSUANCE | CLASS |
|------|--------|------------------|------------------|-------|
| SWOOSH DESIGN | | 977,190 | 1/22/74 | 25 |
| NIKE | | 978,952 | 2/19/74 | 25 |
| SWOOSH | | 1,200,529 | 7/2/82 | 25 |
| NIKE | | 1,214,930 | 11/2/82 | 25 |
| NIKE AIR COMPOSITE MARK | | 1,284,386 | 7/3/84 | 25 |
| NIKE AIR | | 1,307,123 | 11/27/84 | 25 |
| SWOOSH DESIGN | | 1,323,342 | 3/5/85 | 25 |
| SWOOSH DESIGN | | 1,323,343 | 3/5/85 | 25 |
| NIKE COMPOSITE DESIGN | | 1,325,938 | 3/19/85 | 25 |
| SWOOSH AIR DESIGN | | 2,068,075 | 6/3/97 | 25 |
| NIKE TREAD DESIGN | | 3,451,904 | 6/24/08 | 25 |
| NIKE SHOE DESIGN AND STITCHING | | 3,451,905 | 6/24/08 | 25 |
| AIR FORCE 1 | | 3,520,484 | 10/21/08 | 25 |

4

| | | | | |
|---|---|---|---|---|
| SHOX DESIGN |  | 2,584,382 | 6/5/02 | 25 |
| ACG NIKE |  | 2,117,273 | 12/2/97 | 25 |
| JUST DO IT. | | 1,875,307 | 1/24/95 | 25 |
| JUST DO IT. | | 1,817,919 | 1/25/94 | 16 |
| JUMPMAN DESIGN |  | 1,558,100 | 9/26/89 | 25 |
| JUMPMAN DESIGN |  | 1,742,019 | 12/22/92 | 25 |
| AIR JORDAN | | 1,370,283 | 11/12/85 | 25 |
| AIR-SOLE | | 1,145,812 | 1/13/81 | 25 |
| AIR MAX | | 1,508,348 | 10/11/88 | 25 |
| NIKE SHOE DESIGN AND STITCHING |  | 3,714,300 | 11/24/09 | 25 |

10.     Most of the foregoing registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065. Nike also owns numerous registrations for the Nike Trademarks for goods and services other than footwear.

## DEFENDANTS' WRONGFUL ACTIVITIES

11.     Defendants, without the consent of Nike, imported, distributed and transported, and/or arranged for, assisted in and/or caused the importation, distribution or transportation in interstate commerce of footwear bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Nike Trademarks.

5

12.     Goods do not legally enter the United States until U.S. Customs and Border Protection ("Customs") authorizes their importation.

13.     Goods brought to the United States may not be distributed or further transported domestically within the United States until Customs has cleared the goods for entry into the United States.

14.     A customs broker's action in filing entry documents allowing for the clearance of goods by Customs (and ultimately, the entry of the goods into the United States) is an integral part of the importation process as well as a prerequisite for the further distribution and transportation of such goods.

15.     As a customs broker, PMC must be licensed by Customs. Licensed customs brokers are authorized to formally enter goods into the United States on behalf of importers.

16.     The United States Attorney has affirmed that a customs broker "must exercise reasonable care to ensure that a POA in his or her possession is valid", and directs customs brokers to Customs' publication on the Customs website for guidance as to methods by which brokers may validate a POA. A copy of the U.S. Attorney's letter is annexed hereto as Exhibit A.

17.     Customs recommends that customs brokers validate a power of attorney by "hav[ing] POAs completed in person so the grantor's personal identification (driver's license, passport, etc.) can be reviewed". Customs also recommends other methods by which brokers may validate POAs, including website searches. A copy of Customs' POA validation guidelines is annexed hereto as Exhibit B. The guidelines are also available on Customs' website at http://www.cbp.gov/xp/cgov/trade/trade_programs/broker/validating_poa.xml.

18.     On or around October 29, 2010, Defendants filed, or caused to be filed, entry documents with Customs entry number BXQ-2008305-6 (hereinafter referred to as the "AL-Beauty Entry"), allowing for the importation of counterfeit Nike footwear into the United States.

19.     The AL-Beauty Entry consisted of 6,896 pairs of counterfeit Nike footwear that were seized by Customs and valued at $242,426.00 (hereinafter the "AL-B Beauty Counterfeit Footwear"). A copy of Customs' seizure notice to Nike concerning the AL-B Beauty Entry is annexed hereto as Exhibit C. A photograph of a sample of the AL-B Beauty Counterfeit Footwear has been annexed hereto as Exhibit D.

20.     The entry documents filed by the Defendants in conjunction with the AL-B Beauty Entry were fraudulent in that they falsely identified the AL-B Beauty Counterfeit Footwear as "plastic shelves", they falsely identified AL-B Beauty & Barber Equipment (hereinafter referred to as "AL-B Beauty") of 200 E Sunrise Highway, Freeport, NY 11520 as the Importer of Record and Ultimate Consignee for the AL-B Beauty Counterfeit Footwear shipment, and they falsely stated that PMC was AL-B Beauty's attorney in fact authorized to file entry on AL-B Beauty's behalf. A copy of the entry document filed by the Defendants in conjunction with the AL-B Beauty Entry is annexed hereto as Exhibit E.

21.     AL-B Beauty is engaged in the business of distributing and selling beauty, barber and spa equipment. AL-B Beauty is not in the business of importing counterfeit or authentic Nike footwear. AL-B Beauty was a victim of identity theft, as the Defendants illegally used AL-B Beauty's name, address and Taxpayer Identification Number in order to import the AL-B Beauty Counterfeit Footwear into the United States.

22.     The entry documents were filed, or caused to be filed, by Defendants and executed by PMC as attorney in fact for AL-B Beauty.

7

2115166-1

23.     In order to file the entry documents with Customs, PMC was required to have a valid customs power of attorney (hereinafter "POA") from AL-B Beauty.

24.     PMC was required to exercise due diligence in verifying their authority via the POA from AL-B Beauty (hereinafter referred to as "AL-B Beauty POA") and related shipping documentation.

25.     PMC was also required to use "reasonable care" in determining the nature of the goods covered by the entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs.

26.     Prior to the making of the AL-B Beauty Entry, PMC failed to make any inquiry as to the nature of the AL-B Beauty Counterfeit Footwear, including a determination that the goods bore any Nike Trademarks. PMC likewise failed to make any reasonable inquiry as to the source of the AL-B Beauty POA annexed hereto as Exhibit F.

27.     PMC had no contact with any person at AL-B Beauty or anyone who represented they had any connection to AL-B Beauty or the AL-B Beauty Entry.

28.     Despite PMC's reference to the AL-B Beauty POA professing to give them authority to make the AL-B Beauty Entry, AL-B Beauty has denied that it ever executed a POA, had any relationship with PMC or had ever authorized PMC to act on its behalf concerning the importation of any goods.

29.     If PMC had exercised reasonable care and/or due diligence in validating the AL-B Beauty POA as recommended by Customs, it would have quickly determined that the POA was fraudulent and AL-B Beauty was not the actual importer of the AL-B Beauty Counterfeit Footwear.

8

30.     Defendants' actions in filing and/or assisting in the filing of the fraudulent entry documentation related to the AL-B Beauty Entry constitutes the proximate cause of the importation of the AL-B Beauty Counterfeit Footwear.

31.     On or around September 29, 2012, Defendants filed, or caused to be filed, entry documents with Customs entry number BXQ-20136631 (hereinafter referred to as the "Fibro Source Entry"), allowing for the importation of counterfeit Nike footwear into the United States.

32.     The Fibro Source Entry consisted of 8,384 pairs of counterfeit Nike footwear that were seized by Customs and valued at $284,282.00 (hereinafter the "Fibro Source Counterfeit Footwear"). A copy of Customs' seizure notice to Nike concerning the Fibro Source Entry is annexed hereto as Exhibit G. A photograph of a sample of the Fibro Source Counterfeit Footwear has been annexed hereto as Exhibit H.

33.     The entry documents filed by the Defendants in conjunction with the Fibro Source Entry were fraudulent in that they falsely identified the Fibro Source Counterfeit Footwear as goods suitable for importation, falsely identified Fibro Source USA, Inc. (hereinafter referred to as "Fibro Source") of 989 Old Eagle School Road, Suite 810, Wayne, PA 19087 as the Importer of Record and Ultimate Consignee for the Fibro Source Counterfeit Footwear shipment, and they falsely stated that PMC was Fibro Source's attorney in fact authorized to file entry on Fibro Source's behalf.

34.     Fibro Source is a forest products trading company. Fibro Source is not in the business of importing counterfeit or authentic Nike footwear. Fibro Source was a victim of identity theft, as the Defendants illegally used Fibro Source's name, address and Taxpayer Identification Number in order to import the Fibro Source Counterfeit Footwear into the United States.

2115166-1

35.     The entry documents were filed, or caused to be filed, by Defendants and executed by PMC as attorney in fact for Fibro Source.

36.     In order to file the entry documents with Customs, PMC was required to have a valid customs POA from Fibro Source.

37.     PMC was required to exercise due diligence in verifying their authority via the POA from Fibro Source (hereinafter referred to as "Fibro Source POA") and related shipping documentation.

38.     PMC was also required to use "reasonable care" in determining the nature of the goods covered by the entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs.

39.     Prior to the making of the Fibro Source Entry, PMC failed to make any inquiry as to the nature of the Fibro Source Counterfeit Footwear, including a determination that the goods bore any Nike Trademarks. PMC likewise failed to make any reasonable inquiry as to the source of the Fibro Source POA.

40.     PMC had no contact with any person at Fibro Source or anyone who represented they had any connection to Fibro Source or the Fibro Source Entry.

41.     Despite PMC's reference to the Fibro Source POA professing to give them authority to make the Fibro Source Entry, Fibro Source has denied that it ever executed a POA, had any relationship with PMC or had ever authorized PMC to act on its behalf concerning the importation of any goods.

42.     Instead, the fraudulent POA was signed by Tun Hsiu Lee, an individual who has no connection with Fibro Source. A copy of the fraudulent Fibro Source POA is annexed hereto as Exhibit I.

43.     If PMC had exercised reasonable care and/or due diligence in validating the Fibro Source POA as recommended by Customs, it would have quickly determined that the POA was fraudulent and Fibro Source was not the actual importer of the Fibro Source Counterfeit Footwear.

44.     Defendants' actions in filing and/or assisting in the filing of the fraudulent entry documentation related to the Fibro Source Entry constitutes the proximate cause of the importation of the Fibro Source Counterfeit Footwear.

45.     PMC also acted as the customs broker for at least one additional shipment allegedly on behalf of Fibro Source that was also seized by Customs, and again was never authorized by Fibro Source.

46.     On or around April 1, 2009, Defendants filed, or caused to be filed, entry documents with Customs entry number BXQ-2003821-7 (hereinafter referred to as the "Graceful Trading Entry"), allowing for the importation of counterfeit Nike footwear into the United States.

47.     The Graceful Trading Entry consisted of 8,736 pairs of counterfeit Nike footwear that were seized by Customs and valued at $296,038.00 (hereinafter the "Graceful Trading Counterfeit Footwear"). A copy of Customs' seizure notice to Nike concerning the Graceful Trading Entry is annexed hereto as Exhibit J. A photograph of a sample of the Graceful Trading Counterfeit Footwear has been annexed hereto as Exhibit K.

11

48.     The entry documents filed by the Defendants in conjunction with the Graceful Trading Entry were fraudulent in that they falsely identified the Graceful Trading Counterfeit Footwear as "mannequins automatons & dis". A copy of the entry document filed by the Defendants in conjunction with the Graceful Trading Entry is annexed hereto as Exhibit L.

49.     Graceful Trading, Inc. (hereinafter "Graceful Trading") is a fictitious or shell corporation created solely for the importation of the Graceful Trading Counterfeit Footwear and has no real operation or business. Upon information and belief, PMC has conspired with unknown third parties in the operation of this fictitious or shell corporation in order to import, distribute and/or to clear the entry of the Graceful Trading Counterfeit Footwear through Customs.

50.     The entry documents for the Graceful Trading Entry were filed, or caused to be filed, by Defendants and executed by PMC as attorney in fact for Graceful Trading.

51.     In order to file the entry documents with Customs, PMC was required to have a valid customs POA from Graceful Trading.

52.     PMC was required to exercise due diligence in verifying their authority via the POA from Graceful Trading (hereinafter referred to as "Graceful Trading POA") and related shipping documentation.

53.     PMC was also required to use "reasonable care" in determining the nature of the goods covered by the Graceful Trading entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs.

54.     Prior to the making of the Graceful Trading Entry, PMC failed to make any inquiry as to the nature of the Graceful Trading Counterfeit Footwear, including a determination

that the goods bore any Nike Trademarks. PMC likewise failed to make any reasonable inquiry as to the source of the Graceful Trading POA.

55.    PMC had no contact with any person at Graceful Trading or anyone who represented they had any connection to Graceful Trading or the Graceful Trading Entry.

56.    If PMC had exercised reasonable care and/or due diligence in validating the Graceful Trading POA as recommended by Customs, it would have quickly determined that the POA was fraudulent and Graceful Trading was a fictitious or shell corporation.

57.    Defendants' actions in filing and/or assisting in the filing of the fraudulent entry documentation related to the Graceful Trading Entry constitutes the proximate cause of the importation of the Graceful Trading Counterfeit Footwear.

58.    On or around April 1, 2009, Defendants filed, or caused to be filed, entry documents with Customs entry number BXQ-2003822-5 (hereinafter referred to as the "Global Garments Entry"), allowing for the importation of counterfeit Nike footwear into the United States.

59.    The Global Garments Entry consisted of 10,080 pairs of counterfeit Nike footwear that were seized by Customs and valued at $341,582.00 (hereinafter the "Global Garments Counterfeit Footwear"). A copy of Customs' seizure notice to Nike concerning the Global Garments Entry is annexed hereto as Exhibit M. A photograph of a sample of the Global Garments Counterfeit Footwear has been annexed hereto as Exhibit N.

60.    The entry documents filed by the Defendants in conjunction with the Global Garments Entry were fraudulent in that they falsely identified the Global Garments Counterfeit Footwear as "mannequins automatons & dis". A copy of the entry document filed by the Defendants in conjunction with the Global Garments Entry is annexed hereto as Exhibit O.

61.     Global Garments Trading, Inc. (hereinafter "Global Garments") is a fictitious or shell corporation created solely for the importation of the Global Garments Counterfeit Footwear and has no real operation or business. Upon information and belief, PMC has conspired with unknown third parties in the operation of this fictitious or shell corporation in order to import, distribute and/or to clear the entry of the Global Garments Counterfeit Footwear through Customs.

62.     The entry documents for the Global Garments Entry were filed, or caused to be filed, by Defendants and executed by PMC as attorney in fact for Global Garments.

63.     In order to file the entry documents with Customs, PMC was required to have a valid customs POA from Global Garments.

64.     PMC was required to exercise due diligence in verifying their authority via the POA from Global Garments (hereinafter referred to as "Global Garments POA") and related shipping documentation.

65.     PMC was also required to use "reasonable care" in determining the nature of the goods covered by the Global Garments entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs.

66.     Prior to the making of the Global Garments Entry, PMC failed to make any inquiry as to the nature of the Global Garments Counterfeit Footwear, including a determination that the goods bore any Nike Trademarks. PMC likewise failed to make any reasonable inquiry as to the source of the Global Garments POA.

67.     PMC had no contact with any person at Global Garments or anyone who represented they had any connection to Global Garments or the Global Garments Entry.

14

68.    If PMC had exercised reasonable care and/or due diligence in validating the Global Garments POA as recommended by Customs, it would have quickly determined that the POA was fraudulent and Global Garments was a fictitious or shell corporation.

69.    Defendants' actions in filing and/or assisting in the filing of the fraudulent entry documentation related to the Global Garments Entry constitutes the proximate cause of the importation of the Global Garments Counterfeit Footwear (hereinafter the AL-B Beauty Counterfeit Footwear, Fibro Source Counterfeit Footwear, Graceful Trading Counterfeit Footwear and Global Garments Counterfeit Footwear will collectively be referred to as the "Counterfeit Nike Footwear").

70.    By filing the entry documentation and/or assisting in the filing of the entry documentation concerning the Counterfeit Nike Footwear, Defendants deemed themselves to have an interest in the goods and to be responsible for their importation.

71.    PMC willfully disregarded their duties as a customs broker in filing the AL-B Beauty, Fibro Source, Graceful Trading and Global Garments Entry documents for the Counterfeit Nike Footwear.

72.    The acts of the Defendants in importing, distributing, transporting, arranging for, or assisting in and/or causing the importation, distribution, transportation, in interstate commerce of the Counterfeit Nike Footwear: (a) are likely to cause confusion and mistake among the consuming public that all such Counterfeit Nike Footwear originates with Nike; (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association between Defendants and Nike; (c) are likely to cause confusion and mistake among the consuming public that said Counterfeit Nike Footwear are being offered to

15

the consuming public with the sponsorship or approval of Nike; and/or (d) have caused and are likely to cause dilution of the distinctive quality of the Nike Trademarks.

73. Defendants imported, distributed, transported, or assisted in and/or caused the importation, distribution and/or transportation of the Counterfeit Nike Footwear knowing the Counterfeit Nike Footwear bore counterfeits of the Nike Trademarks, or willfully ignored whether the Counterfeit Nike Footwear bore counterfeits of the Nike Trademarks. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said Counterfeit Nike Footwear and, to gain to Defendants, the benefit of the enormous goodwill associated with the Nike Trademarks. The aforementioned acts of Defendants are also likely to dilute, and have diluted, the distinctive quality of the Nike Trademarks.

74. Defendants' actions constitute a direct infringement in violation of the Lanham Act or, such conduct makes the Defendants contributorily and/or vicariously liable for the infringement through their assistance that caused and/or resulted in importation, distribution and/or transportation of the Counterfeit Nike Footwear.

## FIRST CLAIM FOR RELIEF
## (TRADEMARK COUNTERFEITING)

75. Nike repeats each and every allegation set forth in paragraphs 1 through 74 above as if fully set forth herein.

76. The Nike Trademarks, as they are being used by Defendants, are identical to or substantially indistinguishable from the registered Nike Trademarks. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

2115166-1

77.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF
(TRADEMARK INFRINGEMENT)**

78.     Nike repeats each and every allegation set forth in paragraphs 1 through 77 above as if fully set forth herein.

79.     Defendants' use of the Nike Trademarks, without Nike's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of footwear and other products bearing counterfeit and infringing Nike Trademarks.

80.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF
(FALSE DESIGNATION OF ORIGIN)**

81.     Nike repeats each and every allegation set forth in paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants' use of the Nike Trademarks, without Nike's consent, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a), in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the footwear imported and distributed by Defendants bearing counterfeit and infringing Nike Trademarks.

17

83.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(FEDERAL TRADEMARK DILUTION)**

84.     Nike repeats each and every allegation set forth in paragraphs 1 through 83 above as if fully set forth herein.

85.     The Nike Trademarks are famous and inherently distinctive. Nike and its predecessors in interest, in connection with the promotion and sale of their products, have used the Nike Trademarks for decades on both a national and international basis. As a result of Nike's extensive and substantial promotion of the Nike Trademarks, the consuming public and trade have come to associate these Nike Trademarks uniquely and distinctly with Nike and its high quality merchandise.

86.     Long after the Nike Trademarks became famous, Defendants, without authority from Nike, used unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks and thereby caused, and are causing, the actual dilution of the distinctive qualities of these registered trademarks.

87.     As a result, Defendants have engaged in trademark dilution in violation of 15 U.S.C. § 1125(c).

88.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**(IMPORTATION OF GOODS BEARING INFRINGING MARKS OR NAMES)**

89.     Nike repeats each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth herein.

90.     Defendants imported Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 15 U.S.C. § 1124.

91.     Defendants have materially contributed to the importation of Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

92.     Defendants have realized gains and profits from the importation, and/or assisting in the importation, of the Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

93.     Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**(VIOLATION OF TARIFF ACT)**

94.     Nike repeats each and every allegation set forth in paragraphs 1 through 93 above as if fully set forth herein.

95.     Defendants imported Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 19 U.S.C. § 1526(a).

96.     Nike has filed copies of its federal trademark registrations covering one or more of the Nike Trademarks with the Department of Treasury and U.S. Customs.

2115166-1

97.    Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Nike demands judgment as follows:

A.    Permanently enjoining and restraining Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them:

1.    From importing, exporting, assisting in the importation or exportation, manufacturing, procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or trafficking in any merchandise not authorized by Nike and bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the Nike Trademarks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to the Nike Trademarks listed in this complaint;

2.    From passing off, inducing, or enabling others to sell or pass off as authentic products produced by Nike or otherwise authorized by Nike, any product not manufactured by Nike or produced under the control or supervision of Nike and approved by Nike, which uses any of the Nike Trademarks listed in this complaint;

3.    From committing any act calculated to cause purchasers to believe that products from Defendants are those sold under the control and supervision

2115166-1

of Nike, or are sponsored, approved, or guaranteed by the Nike, or are connected with and produced under the control or supervision of Nike;

4.      From transacting customs business in the name of a principal without first receiving a valid POA from said principal. In compliance with this requirement, Defendants shall take reasonable steps to investigate and confirm the authenticity of all POAs it receives prior to filing any customs entry document or otherwise conducting customs business. Compliance with one of the following three procedures is deemed reasonable and in compliance as to POA validation:

a)      Defendants shall receive:

(i)      contemporaneously with the receipt of a POA, and prior to filing of any entry documents, a digital copy or photograph of a U.S. (federal or state government) issued passport, drivers license or identity card (hereinafter collectively "U.S. Government ID") bearing the identical name as the individual who executed the POA; or

(ii)      a fully notarized POA, prior to filing of any entry documents. The notary of such POA, shall record the full name and address as detailed on the U.S. Government ID bearing the signatory's photograph, together with all identification numbers and the governmental agency which issued the identity document presented; and

21

(iii)    Defendants shall also confirm the relationship between the individual signing the POA and the importer through an independent check of public or internet databases, such as corporate records, licensing, State Secretary of State registrations and importer's website, to confirm that the individual that has signed the POA is an officer, director or other person authorized to bind the importer, or alternatively, by contacting the importer directly via publicly listed phone numbers and/or email addresses and receiving confirmation that such individual has been authorized to bind the importer; or

b)    Defendants shall receive:

(i)    a POA prior to the filing of any entry documents; and

(ii)    payment for all of its services directly from the importer prior to the filing of the entry documents. Such payment shall be made via business check or wire transfer and either form of payment shall identify the identical importer as detailed on the POA; or

c)    Defendants shall:

(i)    obtain a business profile for all new customers, and require the importer identify in writing its address, telephone numbers, email address and whether they intend to import goods bearing any copyrighted properties or trademarks registered in the U.S. on company letterhead;

22

(ii)     confirm that the importer's name and address, social security number, importer number and/or Employer Identification Number match the information contained in U.S. Customs and Border Protection's ACS/ACE databases;

(iii)    utilize applicable websites to verify with state and federal government authorities, that the corporate, license and/or registration information provided by the importer and the information detailed in Paragraph c(i) above is truthful and accurate;

(iv)    require the importer to provide documentation from the Internal Revenue Service to confirm the tax identification number of the importer or, in the case of an individual/sole proprietor, the social security number; and

(v)     review a copy of a U.S. Government ID bearing a photograph of a verified principal, director or officer of the business, supported by another form of identification bearing the identical name as the individual who signed the POA.

5.      In complying with Paragraph (4) above, where Defendants receive a POA referral from another Customs Broker or from a freight forwarder (known as an "Authorizing Agent"), Defendants are required to take reasonable steps to validate the identity of the individual who issued the original POA to the Authorized Agent consistent with Paragraph 4 above.

23

6.      In compliance with Paragraph 4 above, Defendants are also required to maintain all records of their independent validations conducted pursuant to Paragraph 4, including any government identification reviewed. All documentation reviewed and all notes taken during any telephone conversations undertaken to validate any POA, shall be maintained for five (5) years from the date of the POA or the date on which such validation was conducted by Defendants, whichever is later.

B.      Directing Defendants to deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, plates, molds, matrices and any other means of production, wrappers, receptacles and advertisements in their possession, custody or control bearing resemblance to the Nike Trademarks and/or any unauthorized reproductions, copies, or colorable imitations thereof.

C.      Directing such other relief as the Court may deem appropriate to prevent any erroneous impression among the trade and/or public that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by Defendants is authorized by Nike or is related to or associated in any way with Nike's products.

D.      Requiring Defendants to account for and pay over to Nike, all profits realized by their wrongful acts and directing that such profits be trebled due to Defendants' willful actions.

E.      Awarding Nike, at its election, statutory damages in the amount of $2,000,000.00 per mark for each type of good in connection with which Defendants used counterfeits of the Nike Trademarks.

F.      Awarding Nike its costs and reasonable attorneys' and investigatory fees and expenses, together with pre-judgment interest.

G.      Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

H.      Awarding Nike such other and further relief as the Court may deem just and proper.

Dated: June 4, 2013

OLSHAN FROME WOLOSKY LLP

By: _____
Safia A. Anand (SA 2386)
Martin J. Feinberg
*Attorneys for Plaintiff, Nike Inc.*
744 Broad Street, 16th Floor,
Newark, New Jersey 07102
(212) 451-2300
(212) 451-2222 (fax)

and

Michael W.O. Holihan
Stephanie Boomershine
Holihan Law
*Attorneys for Plaintiff, Nike Inc.*
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
(407) 660-8575

25

2115166-1